186 So. 94

**MARTIN v. MARTIN.**

No. 34923.

Jan. 10, 1939.

Bert E. Durrett and Sanders & Miller, all of Baton Rouge, for appellant.

Carlos G. Spaht, of Baton Rouge, for appellee.

HIGGINS, Justice.

On October 26, 1937, the plaintiff filed suit against his wife for a divorce, a vinculo matrimonii, under the provisions of Act No. 269 of 1916, as amended by Act No. 31 of 1932, generally known as the "Four Year Separation Law." The defendant, in her answer, admitted that the required period of the separation had elapsed and that of the marriage there are no living children nor community property left. In reconvention, she asked for alimony, alleging that she was not "at fault," had no income, was unable to work because of ill health, and, as she had to employ counsel to represent her, that she was entitled to an attorney's fee.

There was judgment in favor of the plaintiff, granting an absolute divorce but awarding the wife $30 per month alimony and $50 for attorney's fees incurred by her in the suit and all costs.

The plaintiff appealed and the defendant has answered the appeal, asking that the alimony be increased to $50 per month.

Article 160 of the Rev.Civ.Code, as amended by Act No. 21 of 1928 and by Act No. 27 of the Second Extra Session of 1934, reads as follows:

"If the wife who has obtained the divorce has not sufficient means for her maintenance, the Court may allow her in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income; provided, however, that in cases where, under the laws of this State a divorce is granted solely on the ground that the married *persons have been living separate and apart for a certain specified period of time, and the husband has obtained a divorce upon the ground of such living separate and apart, and the wife has not been at fault,* then the Court may allow the wife in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income.

"This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage." (Italics ours.)

After the plaintiff and defendant had both testified that they had lived separate and apart continuously for a period of four years, the defendant, as plaintiff in reconvention, testified that the parties had been married for eleven years; that the only community property consisted of an automobile and household furniture and effects, and when they separated, he took the automobile and his personal belongings but left the household furniture and effects with her; that the two offspring of the union died at birth; that while her husband was not a drunkard, she objected to his drinking intoxicating liquors to excess; that she remonstrated with him when he associated with persons who drank intoxicating liquors and kept him away from home for his own good and wellbeing; that she complained when he went hunting and fishing and left her home alone; that she got into arguments with him about being interested in another woman, after he had told her that he did not love her and had an affection for the other party; that she had never cursed, abused or struck him; that she had been a dutiful wife and had done everything in her power to make his home comfortable and happy; that she gave him no cause or provocation for leaving her; that when he abandoned her, she wept because she did not want him to go; that although she was suspicious of her husband paying attention to another woman, he had always been a steady worker and a good provider.

On cross-examination, the plaintiff admitted that he was making $190 per month and had regular employment; that he made a division of the community property, as stated by his wife, before he left; that for about three years he had volun-

tarily given his wife $25 per month for her support and paid dues in an association, which furnished her medical services; that when he discontinued these payments, she filed a charge against him for non-support and the court awarded her $25 per month alimony, which he paid regularly; that his wife was an excellent housekeeper but they were unable to get along; that she was constantly quarreling, nagging and fussing, because she did not want him to have any recreation; that when he was going hunting, she objected and stated that she hoped he did not kill anything; that when he went fishing, she protested and said she hoped he would not catch anything; that she did not want him to be friendly with the neighbors; that he drank intoxicating liquors moderately but his wife did not want him to drink at all; that whenever he wanted to go out for pleasure, she wanted to stay home; that on one occasion, about a year before the separation, during the Christmas Holidays, while he was drinking some wine or whiskey, although he was not drunk, his wife objected and attempted to slap the glass from his hand and cursed him in the presence of his friends, causing him embarrassment; that on another occasion, sometime before he left her, when they were visiting the home of her sister and brother-in-law, while he was having social drinks with them, she flew into a rage, emptied the remainder of the whiskey from the bottle and cursed and abused him and the others present, this occurring about 12 o'clock at night; that one day, sometime before they separated, he and her father were eating lunch with

her at the house when it began to rain; that she ran out in the yard and took the clothes from the line and brought them inside; that it stopped raining and she then replaced them on the line and returned to the house; that almost immediately there was another shower and she hurried out into the yard and brought the clothes in again and angrily exclaimed, that he was not a damn bit of help to her; that his wife accused him of improper attentions to a young lady living at Dixie, but her suspicions were unfounded, for he was only "kidding" when he told her that he liked a young lady working in a beer parlor; that his wife was highly nervous and irritable at times and her constant nagging made it impossible for him to live with her; and that when she became aware of his intention to leave her, for several weeks preceding his going, her conduct was much better.

Dr. C. T. Morriss testified that he had treated the defendant for several years for high blood pressure, which varied between 150 and 190, the cause of which was not known, the symptoms being headaches, periods of dizziness and excessive nervousness, which rendered her incapable of any physical work except light housekeeping; that her condition had grown worse, notwithstanding the treatments; that there was no known cure for her ailment; and that he had attended her as the physician for the Association to which her husband belonged.

Mr. and Mrs. E. T. Raiford, as witnesses for the defendant, stated that they lived next door to this couple, their homes

being separated only by a narrow driveway and so close together that they could hear anyone walking or talking in the Martin residence; that they lived as neighbors for three years and never heard these parties fussing or quarreling and were amazed when they learned of their separation; and that he was a regular and steady worker and that she was devoted to her home. Mrs. Raiford said that she had seen the plaintiff riding in his automobile with a young woman on two occasions.

Mr. and Mrs. Joseph Crochet, the sister and brother-in-law of the defendant, testified as witnesses for the plaintiff, stating that they were present when the wife attempted to slap a glass of liquor from his hand during the Christmas Holidays, but denied that they had heard her curse and abuse him; that they were present at their home in White Castle when the wife poured the remainder of the whiskey from a ketchup bottle about 11 or 12 o'clock at night and left their house, because she did not want her husband to drink any more, although he was not drunk; that Mrs. Crochet followed her into the street, where the wife remarked that the Martins and the Crochets were "damned drunkards," and that she did not appreciate her sister and brother-in-law encouraging her husband in drinking; that Mrs. Crochet was hurt by her sister's accusation, but pacified her and she returned to the house; that the cause for the quarreling between the couple was because the husband liked to have a "decent good time" with friends, but the wife liked to stay at home; that they never heard her curse and abuse him in any other way or on any other occasion; and that, when Mrs. Crochet visited her sister's home shortly before her husband left her, everything was peaceful and quiet.

The defendant, in rebuttal, denied that she had ever cursed and abused her husband, or unduly interfered in the reasonable exercise of his rights to pleasure and recreation, but showed her disapproval of his drinking intoxicating liquors for his own benefit. She admitted that she expressed her displeasure in her husband courting a young lady, and says that finally her suspicions were confirmed when he admitted that he had fallen in love with the girl and had been taking her out for about ten months and wanted his wife to return to the home of her parents in New Orleans, but she refused to do so.

It is clear that the wife proved by a preponderance of the evidence that she was not at fault in causing the separation, for she did nothing to justify the husband in leaving her. She had a right to endeavor to prevail upon him to give up associates who were causing him to form the habit of drinking and keeping him away from home and leaving her alone. She, unquestionably, had the right to voice her objections to her husband becoming enamored of another woman. He sowed the seeds of distrust and the wife is not to be condemned for making an effort to retain his affection and to protect her home from disruption and threatened destruction. He is solely to blame for any argument that might have resulted from any misunderstanding about the "young lady who worked in the beer parlor," or from "Dixie."

It will be noted that the defendant, under the facts of this case, had the same right as the plaintiff to obtain a judgment of divorce.

The attempt of the husband, by going back over the eleven years of his married life, to show that his wife was at fault in "nagging and fussing" with him to the extent of making his life unbearable, is unimpressive. At all times he used these general terms and could never give any idea of the time when "the nagging and fussing" were supposed to have happened. The two specific occasions referred to when she is said to have raised a disturbance about his drinking intoxicating liquors was fixed by him about one year before the separation and by his two witnesses, probably three or four years before it occurred. These two incidents certainly would not justify him in abandoning his wife, after staying with her for such a long period of time after they happened, and especially is this true when he and his own witnesses admitted that for several weeks prior to the separation the parties lived together peacefully and quietly.

It is our opinion that the trial judge reached the correct conclusion in holding that the wife had proved by a preponderance of the evidence that she was not at fault in causing the separation, within the meaning of the provisions of Article 160, Rev.Civ.Code, as amended.

The claim for an increase in the alimony to $50 per month is refused, the wife having testified that she would be satisfied with $25 per month, plus an allowance for medical attention, which our learned brother below fixed at $5 per month.

The trial judge, under the circumstances, properly allowed attorney's fees to the wife to protect her rights, and certainly the amount is reasonable and fair. Newson v. Newson, 176 La. 699, 146 So. 473; Gosserand v. Monteleone, 159 La. 316, 105 So. 356, 42 A.L.R. 310.

For the reasons assigned, the judgment is affirmed; appellant to pay all costs of court.